**Dated: July 19, 2012**

**The following is ORDERED:**



TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

SIVEC SRL, as successor in          Case No. 11-80799-TRC
liquidation to Sirz Srl,                 Chapter 15

Debtor in a Foreign Proceeding.

### MEMORANDUM OPINION
### GRANTING MOTION FOR RELIEF FROM STAY
### TO ALLOW RECOUPMENT/SETOFF

This memorandum opinion is filed in support of this Court's Order and Judgment Granting

Zeeco's Motion for Relief from Stay to Allow Recoupment/Setoff entered simultaneously herewith.

**I.**      **JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is

proper pursuant to 28 U.S.C. § 1410. Reference to the Court of this matter is proper pursuant to 28

U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(G) and (P).

## II.    BACKGROUND

This Court is not aware of a case in the history of the Eastern District of Oklahoma in which every judicial resource has been utilized to resolve what appears - at least to this Court - to be a simple contract dispute between two businesses.  Disputes between Debtor, an Italian corporation, and a U.S. corporation have been before both Magistrate Judges in the Eastern District, a United States District Court Judge, a Federal District Court Jury, an Italian Bankruptcy Court, and continue before this Bankruptcy Court.  The facts are as follows[1]:

The parties entered into a contract in October of 2005, for Zeeco to purchase parts manufactured by Sivec's predecessor[2] to be used on a project in Qatar.[3]  The contract was amended several times.  Sivec was to obtain a warranty bank guaranty or bond to satisfy any warranty claims made, but instead, the parties agreed that Zeeco would retain 10% of the contract price to cover any warranty claims made during the two year warranty period.  Sivec's duties were completed in July of 2007, and the warranty period expired two years later in July of 2009.  No claims were made on the warranty, although Zeeco claimed there were problems with the parts.  Zeeco claimed that Sivec

---

[1]Facts regarding the parties' contractual relationship are found in the *Petition for Recognition, Docket Entry 1-1,* and *Objection to Motion for Relief with Exhibits, Docket Entry 50-1,* both filed by Petitioner Gabriele Bordin on behalf of Sivec SRL, herein, and the *Pretrial Order*, *Docket Entry 122*, in 10-cv-143-JHP, United States District Court for the Eastern District of Oklahoma, as well as other documents identified herein.

[2]Sivec SRL is identified as the successor-in-interest to Sirz, Srl, the company that contracted with Zeeco and which filed the Italian proceeding.  Bordin represented that the name was changed to Sivec SRL in 2008 to avoid confusion with a similarly named company that was not in insolvency proceedings.

[3]At a hearing before this Court on May 23, 2012, as well in briefs filed of record, Zeeco's counsel represented that this contract was executed in Oklahoma, with Sivec representatives traveling from Italy to Oklahoma to sign the agreement.

first breached their contract as early as July of 2006, and that the breaches continued into early 2007.

In March of 2008, Sivec's predecessor petitioned for bankruptcy relief as a *concordato preventivo*

under Italian law in Padua, Italy ("Italian Proceeding"), which is in the nature of a reorganization.[4]

Zeeco claims it did not receive notice. Sivec's known creditors were notified of the filing so as to

be able to vote on Sivec's proposed plan for reorganization. As the plan was drafted, Zeeco was

considered to be a debtor, rather than a creditor, and thus was not entitled to receive notice of the

Italian proceeding to be able to file a claim or to vote on the plan.[5] The plan of reorganization was

approved by Sivec's creditors and the Italian court in November of 2008. It called for a distribution

of 34% to unsecured creditors, with any late-filing creditors receiving approximately 15% of their

claims. It appointed Mr. Gabrielle Bordin ("Bordin") as the Judicial Receiver.[6] Sivec valued its

assets "conservatively" at approximately € 13,000,000.[7] The parties recently represented to this

Court that the retainage claim against Zeeco is the only asset of the estate.

After the warranty period expired, Sivec made demand on Zeeco to return the warranty

retainage.[8] Zeeco refused, and eventually filed suit in the Eastern District of Oklahoma against Sivec

---

[4]*See Docket Entry 50-1, Declaration of Alessandro Della Chà*. Della Chà is an attorney in Milan, Italy.

[5]*Id.* at ¶ 11.

[6]*Docket Entry 1*. Bordin is the Foreign Representative, also referred to as the Trustee or Petitioner, in this Chapter 15 case. He is identified as representative of the "Group of Creditors" in one of the orders issued by the Italian Tribunal and Andrea Ballardin is the liquidator of Sivec. Bordin is also appointed as "liquidator" by the Italian Tribunal, and has been known as the "Judicial Commissary."

[7]*Docket Entry 1-3, Exhibit B*.

[8]The demands were made by Andrea Ballardin as liquidator of Sivec. *See also District Court Docket Entry 131.* Apparently, Ballardin continues to act as the Liquidator of Sivec, as

for breach of contract (Count I) and declaratory judgment asserting that it was entitled to keep the retainage in satisfaction of damages awarded against Sivec (Count II). Sivec consented to the jurisdiction of the District Court, filed a counterclaim to have the warranty retainage returned, and plead the applicability of foreign law. The case proceeded for approximately fourteen months and was set for jury trial on June 20, 2011 ("Eastern District Lawsuit").[9]

On June 2, 2011, Bordin filed in this Court a Petition for Recognition of Foreign Proceeding on behalf of Sivec, pursuant to Chapter 15 of the United States Bankruptcy Code.[10] Bordin identified the Italian Proceeding as a "liquidation."[11] In filing the Chapter 15 Petition, Bordin sought a stay of the Eastern District Lawsuit, and an order directing Zeeco to return the warranty retainage.[12] Sivec argued that the Bankruptcy Court was better equipped than the District Court to address issues regarding Zeeco's claim, thus the pending trial should be permanently stayed.[13] This Court granted recognition but declined Sivec's request to stay the Eastern District Lawsuit. Instead, it lifted the stay to allow the Eastern District Lawsuit to proceed to judgment, citing that court's familiarity with

---

stated in the Response he filed in the Eastern District lawsuit in December of 2011, wherein he requested that the issue of setoff be "remanded to the Bankruptcy Court."

[9]Case No. 10-cv-143-JHP, Eastern District of Oklahoma. *See also, Docket Entry 70* in the Bankruptcy case. According to evidence presented at the July 11, 2011 hearing in Bankruptcy Court, the filing of the Eastern District lawsuit did not violate a stay since no stay was in place in the Italian bankruptcy case. In any event, apparently Sivec never raised this issue in the Eastern District Court, or waived it by appearing and defending against Zeeco's claims.

[10]*Docket Entry 1.*

[11]*Docket Entry 1-6*, *Statement of Foreign Representative.*

[12]*Docket Entry 1-4, Exhibit C, Proposed Order.*

[13]*Docket Entry 50.*

the issues, Sivec's active participation in that case and request for affirmative relief therein, and the need to protect Zeeco's interests in accordance with Chapter 15, §§ 1506, 1519 and 1521. In accordance with Sivec's request pursuant to § 1521(a)(3), this Court ordered that "all creditors, including Zeeco, shall be prohibited from transferring, encumbering or otherwise disposing of any assets in which Sivec claims an interest until further order of this Court ...."[14] This Court also retained jurisdiction "with respect to the enforcement, amendment or modification of this Order or requests for any additional relief in this case filed under Chapter 15...."[15]

A jury trial was held in the Eastern District Lawsuit in November of 2011. Prior to the trial, Sivec represented to the District Court that it was not under that Court's jurisdiction regarding Count II and the issue of setoff, arguing that the Bankruptcy Court had "exclusive jurisdiction" over the retainage held by Zeeco.[16] The District Court reserved Count II for decision post-trial. The jury awarded Zeeco $ 1,744,043.00 on its breach of contract claims against Sivec. It awarded Sivec € 952,840 on its warranty retainage claim against Zeeco. Zeeco moved for entry of the verdicts and for a determination of its claim for declaratory relief to allow setoff under Count II of its Amended Complaint.[17]

On December 2, 2011, a letter entitled "Request for Comity" was emailed to the chambers

---

[14]*Docket Entry 69.* The order lifting the stay was a final order that was not appealed.

[15]*Id.*

[16]*District Court Docket Entry 106.* Sivec also argued that "It is for the Bankruptcy Court to determine, in conjunction with the Italian Tribunal, whether Zeeco would have a right to actually collect on any judgment." It represented that Zeeco had "at best" an unsecured claim.

[17]*District Court Docket Entry 129.*

Case 11-80799   Doc 138   Filed 07/19/12   Entered 07/19/12 12:58:02   Desc Main
Document - Motion Relief from Stay   Page 5 of 29

of Judge Payne of the Eastern District, and Judge Cornish of the Eastern District Bankruptcy Court.[18]

The email was from Maria Antonio Maiolino, who identified herself as a judge writing on behalf of

the Tribunale of Padua.  The email requested that Judge Cornish stay all proceedings in the Eastern

District Lawsuit regarding Count II of Zeeco's Amended Complaint, and direct the parties to submit

issues of setoff to the Italian Tribunal.  Several days later, Sivec filed a Memorandum of Position

urging the Bankruptcy Court to immediately grant and do whatever was necessary to effectuate the

Tribunale's Request.[19]  A second "Request for Comity" was emailed to Judge Payne and Judge

Cornish on December 15, 2011.[20]  This second email repeated the request that Judge Cornish issue

an order staying further proceedings regarding Count II in the Eastern District Lawsuit and directing

the parties to proceed to Italy to determine rights of setoff.

On January 10, 2012, the District Court entered judgment in accordance with the jury's

verdicts.[21]  By separate order, the District Court denied Zeeco's request for declaratory relief and

remanded the case to this Bankruptcy Court.[22]  The District Court refused to allow Zeeco to setoff

the warranty retainage against what Sivec owed on the breach of contract judgment.  Instead, citing

the Request for Comity from Judge Maiolino, the District Court stated that the issue should be

---

[18]*Docket Entries 74 and 97*.  The first Request for Comity is addressed to both Judge Payne and Judge Cornish. It was emailed from Maria Antonia Maiolino to Alexia Bible, who is Judge Cornish's Judicial Assistant, and to Linda Ambrose, Judge Payne's Judicial Assistant.

[19]*Docket Entry 78*.

[20]*Docket Entries 80 and 98* .  The second Request for Comity is addressed only to Judge Cornish.  Like the first Request, the second Request was emailed from Maria Antonia Maiolino to Alexia Bible and to Linda Ambrose.

[21]*Docket Entry 84.*

[22]*Docket Entry 83.*

determined under Italian law, and that Italian bankruptcy procedure comported with U.S. standards of procedural fairness.[23]  Zeeco filed a Combined Rule 59(e) Motion to Alter or Amend Judgment on February 5, 2012.[24]  The motion was denied by minute order on May 21, 2012.[25]

A third "Request for Comity" to Judge Cornish was attached to an email to Alexia Bible on February 16, 2012.[26]  This Request refers to "this Judicial Receiver" throughout the recitations, and is signed by Judge Maria Maiolino.  It actually appears to be a request from the Judicial Receiver (presumably Bordin) to the Italian Tribunal rather than a Request submitted to the U.S. Court, although it is composed in English, and appears to be on the same letterhead of the Tribunale Di Padova as the first two Requests.[27]  The last paragraph states:

> [t]his Judicial Receiver is hereby requesting this Tribunal to recognize and enforce Sivec's portion of the foreign judgment as entered by the District Court and order that Zeeco makes immediate restitution of the judgment amount to this Tribunal to be deposited with trust account established for this matter.

Another email with attachment was sent to Alexia Bible and Linda Ambrose from Judicial Receiver Gabriele Bordin on April 23, 2012.[28]  Attached to the email was an order issued by Judge Maiolino, in Italian with an English translation, that sets a hearing to "ascertain whether or not

---

[23]*Id.* at p. 3.

[24]*District Court Docket Entry 137.*

[25]*District Court Docket Entry 142.*

[26]*Docket Entries 95* and *99.*  The email is from Maria Antonia Maiolino and was sent to Alexia Bible only.

[27]This Court does not know whether the differences in spelling in the  Requests - "Tribunal" vs. "Tribunale" - are of any importance.

[28]*Docket Entries 116* and *117.*

Zeeco, Inc, intends to assert its own credit within the bankruptcy procedure." It refers to a report received from Bordin, which is attached to the email. Bordin's two-page report is in Italian and is not translated into English. Thus, the Court is unable to read and understand it.

Zeeco filed the pending Motion for Relief from Stay to allow Recoupment/Setoff with this Court on February 3, 2012.[29] It also sent discovery requests to Sivec, which primarily sought information regarding the Requests for Comity being emailed to the District Court and this Bankruptcy Court. This Court conducted a telephonic status conference on February 21, 2012.[30] During that conference, this Court inquired as to the origin and authorship of the emails and attachments being sent to the courts. Sivec's local counsel replied that it was attempting to discover that information. Zeeco filed a Motion to Compel Discovery on March 29, 2012.[31] The Court held a hearing on the Motion to Compel Discovery and Motion to Lift Stay on May 23, 2012.[32] During that hearing, after repeated questioning from this Court, Sivec's Chicago counsel admitted that it had prepared some documents for Bordin, and that it may have submitted proposed orders to its client Bordin. Counsel stated that it would have to undergo a review of the documents it drafted with the Requests for Comity to be able to answer this Court's questions regarding the origin of the Requests.

After that hearing, Sivec filed a Sur-Reply to the Motion to Compel, in which it represented that Zeeco had appeared before and had not challenged the jurisdiction of the Italian Tribunal. It attached a letter addressed to Judge Maiolino from Zeeco's Italian counsel, which states: "Nothing

---

[29]*Docket Entry 91.*

[30]*Docket Entry 102.*

[31]*Docket Entry 106.*

[32]*Docket Entry 124.*

contained within this letter should be considered recognition of Italian jurisdiction ...."[33]  Zeeco disputed that information in a Reply to Sivec's Sur-Reply.[34]  An Affidavit from Zeeco's Italian attorneys is attached, which recounts what transpired at the "meeting" referenced in Sivec's Sur-Reply, which was held by Judge Maiolino on May 25, 2012, and attended by Bordin and Zeeco's two lawyers.  The affidavit relates the Affiants' version of what occurred at the meeting.  The affidavit states that Zeeco did challenge the jurisdiction of the Italian Tribunal, that Judge Maiolino stated she did not have the same role as a U.S. Bankruptcy Court Judge, that she would not be entitled to rule on the issues of setoff, priority of claims, or whether Zeeco's claim was secured or unsecured, and that the three requests for comity she sent to the U.S. Courts were provided to her by Sivec's U.S. counsel.  The affidavit also states that Bordin understood this to be Ms. Maiolino's position and that he had made that clear to his lawyers.  Italian proceedings were postponed until September 18, 2012.

Sivec responded by filing a Combined Motion to Set Joint Hearing and For Protective Order on June 18, 2012.[35]  The Motion asks this Court to communicate directly with the Italian court at a joint, telephonic hearing, or, in the alternative, Bordin is authorized by the Italian judge to invite this Court to attend and visit the Italian Tribunal in Italy.  Sivec also seeks a protective order that strikes Requests for Admission sent it by Zeeco on June 1, 2012.  In support of its request for a protective

---

[33]*Docket Entry 126.*  Sivec also states that "At no time has the Receiver urged that United States law applies to the liquidation proceeding or requested that this Court administer the liquidation proceeding." ¶ 2.  It then cites its Verified Petition, *Docket Entry 1.*  However, in the Pretrial Order in the Eastern District Lawsuit, Sivec states that this Bankruptcy Court has jurisdiction over this dispute and will decide whether Zeeco has the right to retain any funds awarded on Count I.  *District Court Docket Entry 122, p. 2.*

[34]*Docket Entry 127.*

[35]*Docket Entry 129.*

order, Sivec states that it "would only further muddy what are already opaque waters" if it has to respond regarding what was or was not said during the May 25, 2012 meeting with Judge Maiolino. Nevertheless, it did respond by submitting a Declaration of Judicial Receiver from Bordin in the Eastern District Lawsuit. This Declaration, dated June 28, 2012, was submitted to this Court as an exhibit to Zeeco's Objection to Sivec's request for protective order.[36] Bordin's Declaration states that Sivec's U.S. counsel prepared the Requests for Comity for Judge Maiolino, and that Bordin sent them to this Judge and to Judge Payne, as if from Judge Maiolino herself. He characterizes the Requests as similar to proposed orders that he submitted for Judge Maiolino's approval. He also states that if Zeeco decided to press its claim and setoff its judgment against Sivec's, the matter would be heard by another judge, not Maiolino. Judge Maiolino is only allowed to handle procedural aspects of the Sivec liquidation.

This Court held a Status Hearing regarding all matters in this case on July 11, 2012. The Court inquired as to the status of the Eastern District Lawsuit and learned that Zeeco's Combined Rule 60(b)(2) and 60(b)(3) motion was pending, as well as an appeal to the Tenth Circuit of the Order of remand and Judgment. That same day, the District Court entered a Minute Order denying Zeeco's Rule 60(b) Motion.[37]

III.    ANALYSIS

The matter before this Court is whether the stay this Court placed upon the assets of Debtor in its Order Granting Recognition of Foreign Main Proceeding and Order Lifting Stay should be lifted to allow the judgments entered in the Eastern District Lawsuit to offset each other, resulting

---

[36]*Docket Entry 134, Exhibit A.*

[37]*District Court Docket Entry 150.*

in Zeeco being allowed to keep the retainage funds it holds, and pursue the remainder of its claim as an unsecured creditor in the Italian Proceeding. In ruling on Zeeco's first Motion for Relief from Stay to allow the Eastern District Lawsuit to proceed to judgment,[38] this Court stated: "Sivec is granted relief pursuant to section 1521(a)(3) of the Bankruptcy Code, and all creditors, including Zeeco, shall be prohibited from transferring, encumbering or otherwise disposing of any assets in which Sivec claims an interest until further order of this Court ...."[39] In addition, this Court ordered:

> This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order or requests for any additional relief in this case filed under Chapter 15 of the Bankruptcy Code and all adversary proceedings in connection therewith properly commenced and within the jurisdiction of this Court....[40]

Thus, this Court made it clear to the parties that nothing should be done with funds claimed by Sivec until further order of this Court, and that this Court retained jurisdiction with respect to requests for additional relief. This was done in accordance with Sivec's request pursuant to § 1521(a)(3). Indeed, it was also Sivec's desire that the District Court not determine this issue, but reserve it for this Bankruptcy Court. In the Pretrial Order, Sivec's position was stated as follows: "[T]he United States District Bankruptcy Court has retained jurisdiction over (Zeeco's) claims in Count II of the operative complaint and will decide (Zeeco's) right to retain any funds awarded under Count I vis a vis the remaining creditors of (Sivec).'"[41] It now argues that this Court should ***not*** decide this issue for two reasons: 1) the District Court has remanded this case and stated that Italian

---

[38]*Docket Entry 29*, filed June 17, 2011.

[39]*Docket Entry 69*.

[40]*Id.*

[41]*District Court Docket Entry 122*, p. 2.

law should be applied; and 2) the Italian Tribunal has requested that this Court extend comity to Italian law, thus preventing it from taking further action.

## A.    District Court's Order Entering Judgment

Sivec argues that the District Court's Order dated January 9, 2012, directed this Court to send this case to Italy and take no further action. That Order does not so direct. The Order remanded the case to this Court, but stops short of ordering this Court to take specific action. The Order states: "[P]laintiff's Motion for Declaratory Relief is denied, and judgment shall be entered in favor of Zeeco in the amount of $ 1,744,043, and for Sivec in the amount of € 952,840, plus interest. This matter is hereby remanded to the Bankruptcy Court for the Eastern District of Oklahoma."[42]

The District Court remanded the Eastern District Lawsuit, although the case did not originate in this Court.[43] The only involvement this Court had in that case was because Sivec filed its Chapter 15 petition, which stayed any proceedings against it. As this Court has done in other cases where lawsuits were pending in state or federal court when the bankruptcy was filed, this Court lifted the stay to allow the Eastern District Lawsuit to proceed to judgment. It did that for several reasons, as set forth in its Memorandum Opinion.[44] Thus, the District Court jury valued the parties' claims and the District Court entered judgments in accordance with those amounts. Although a remand may not be technically proper for a case that did not originate in this Court, the Order clearly recognizes that this Court must take some further action in light of the pending Chapter 15 filed by Sivec and

---

[42]*Docket Entry 83.*

[43]  *See* 28 U.S.C. § 1452. The Eastern District Lawsuit has not been transferred to this Court. Therefore, this Court presumes that the remand was in the nature of a deferral to this Court of bankruptcy issues in the Chapter 15 case.

[44]*Docket Entry 70.*

this Court's Order prohibiting any disposal of Sivec's assets that may be located within the United States.

In recommending that principles of comity dictate that the Italian courts should decide this dispute, the District Court Order relies on several factors. One is the jury's verdict. The Order states: "the jury's verdict on Sivec's counterclaim establishes the funds held by Zeeco were properly listed as an asset of Sivec's liquidation estate."[45] This statement implies that the jury must have intended for Zeeco to return the funds to Sivec or that the funds were subject to the control of Italian authorities. However, this Court can find no record of any specific findings made by the District Court jury. Based upon the representations of both parties to this Court, the jury was never told about the Italian liquidation and/or bankruptcy proceedings, as such evidence was expressly excluded by the District Court's Order in Limine.[46] Therefore, this Court is puzzled as to how the jury could have made any determination or recommendation regarding Count II, or deference to Italian law. Also, even if the jury was somehow aware of the bankruptcy and of the assets of the Italian bankruptcy estate, this appears to be a legal conclusion that would not have been before the jury.

Another factor mentioned in the District Court's Order is the Request for Comity. The Order was entered after two Requests for Comity were sent from Judge Maria Antonia Maiolino, on behalf of the "Tribunale de Padova."[47] The Order notes that "[t]he Italian Court has asked that comity be

---

[45]*Docket Entry 83.*

[46]*District Court Docket Entry 118, Minute Order Sustaining Pl.'s Mot. in Limine.*

[47]The first Request for Comity is dated December 2, 2011, and is addressed to both Judge Payne and Judge Cornish. It was emailed from Maria Antonia Maiolino to Alexia Bible, who is Judge Cornish's Judicial Assistant, and to Linda Ambrose, Judge Payne's Judicial Assistant. The second Request for Comity is dated December 15, 2011, and is addressed only to Judge Cornish. However, this Request was emailed to Alexia Bible and to Linda Ambrose.

extended."[48]  However, as the parties proceeded with discovery in this Court, some information emerged about Judge Maiolino and her Requests for Comity that was unknown to the District Court at the time the judgments were entered.  As the Court will discuss herein, there is some question about the origins and timing of these Requests and the power of the author to seek the relief requested.  Whether any of this information would have altered the District Court's decision on the issue of comity is obviously unknown, but it does appear that the District Court placed some emphasis on the fact that comity had been requested by the Italian Court.

Finally, the District Court relied solely on the principle of comity in determining that it would be inappropriate for a domestic court to intervene in a foreign proceeding of liquidation of one of its own businesses.  It determined that any consideration regarding offset would be inappropriate under Chapter 15.  However, the fact that a proceeding involves a foreign debtor does not end the inquiry under Chapter 15.  Comity is only to be extended so long as the interests of U.S. creditors are sufficiently protected, [49] and so long as any actions taken are not manifestly contrary to the public policy of the United States.[50]  Therefore, further analysis on the motion to allow recoupment or setoff is required before a determination can be made regarding whether to honor the requests for comity and order the parties to Italy.[51]

---

[48]*Docket Entry 83.*

[49]11 U.S.C. §§ 1501(a)(3); 1507(b); 1521; 1522.

[50]11 U.S.C. § 1506.

[51]This analysis is also recognized in *In re Rosacometta, S.r.l.*, 336 B.R. 557 (Bankr. S.D. Fla. 2005), cited by Sivec and in the District Court's Order of remand. Although comity was a prominent consideration under pre-Chapter 15 law, the *Rosacometta* court noted that it should only be granted after other factors are analyzed, such as the just treatment of claimants, and protection of U.S. creditors against prejudice and inconvenience in processing of claims in the

**B.**      <u>Requests for Comity</u>

This Court has never received the original signed Requests from Judge Maiolino - only copies supplied as attachments in the emails. Thus, it is difficult for the Court to verify the authenticity of the Requests. It is unclear from the Requests themselves what position Judge Maiolino holds in Italy, what power and authority she possesses, and whether she is the true author of these Requests.[52] The Court notes that Judge Maiolino is not listed as one of the three judges who signed the orders regarding the Italian bankruptcy proceeding submitted by Sivec to this Court as exhibits to its Chapter 15 Petition for Recognition, nor is her name listed in those Orders.[53] This Court cannot independently verify her authority to act nor can it verify the current status of the Italian proceeding, which has been described as a liquidation, and was initiated nearly four years ago. The Requests themselves are in English, signed by Judge Maiolino, not in Italian and translated into English as are other official documents that have been presented to this Court. And, the letterhead of these Requests does not appear to be the same letterhead used by Judge Maiolino in other orders she has issued.

---

foreign proceeding. *Id.* at 564-565. That court also limited its decision to the specific facts of that case, which are distinguishable from the facts of this case. *Id.* at 564. The creditor became so by purchasing a default judgment entered against the debtor postpetition. With full knowledge of the foreign bankruptcy, the creditor garnished a third party that owed funds to debtor as a settlement of separate lawsuit.

[52]*See Docket Entry 147-1*, Declaration of Judicial Receiver, which states that the Requests were drafted by Sivec's U.S. counsel at the Receiver's request, and were emailed by him. This Court is unclear as to whether or how the Receiver obtained access to Judge Maiolino's email account to send the Requests. In any event, until the hearing before this Court on May 23, 2012, there was no indication that Sivec or Bordin was involved in the drafting, transmittal to Judge Maiolino, and eventual emailing of the Requests to this Court and the District Court. To now liken its involvement in this process as a simple submission of proposed orders is disingenuous.

[53]*Docket Entry 1, Exhibits A and B.*

The only evidence that has been presented regarding Judge Maiolino is through affidavits submitted by Italian counsel on behalf of each party. According to Affidavits of Zeeco's Italian attorneys and Bordin's Declaration, Judge Maiolino is not on the level of this Court, yet she requests that this Court order a turnover of funds to Bordin or her, and implies that she is in a position to hear and adjudicate the claims of these parties. From Bordin's recent Declaration, however, we learn that Judge Maiolino has authority over procedural matters only, and that any substantive issues must be submitted to another judge or tribunal. This Court is curious as to why Judge Maiolino is so persistent in seeking comity and deference if she is not in a position to determine these parties' dispute.

At two hearings conducted by this Court, inquiry was made regarding the Requests. In February, Sivec's local counsel was questioned by this Court regarding the author and authenticity of these Requests. He answered that he was attempting to find out. During the May 23, 2012 hearing, Sivec's Chicago counsel admitted to this Court that it had prepared some documents for Bordin, and that it may have submitted proposed orders to its client Bordin. Counsel told the Court that it would need to compare what was submitted to Bordin with the Requests themselves to determine whether the Requests were verbatim with what they provided to Bordin. Now, however, in Bordin's June 28, 2012 Declaration, Sivec reveals for the first time - and in direct contradiction to its earlier statements to this Court - that its own U.S. counsel prepared the Requests for Comity for Judge Maiolino, and that Bordin sent them to this Judge and to Judge Payne, as if from Judge Maiolino herself. Sivec says this was simply a proposed order submitted for Judge Maiolino's approval. This Court certainly understands that orders are often drafted by attorneys and submitted to a court to review and enter. However, the normal procedure that this Court follows is that an

attorney-drafted order is the result of a motion and response, with either an actual hearing or notice and opportunity to be heard. The Requests do not appear to this Court to be in the nature of an order resulting from a hearing, which attorneys may have drafted. Thus, counsel's suggestion that any contribution it may have made to the drafting of these Requests was in the nature of drafting a proposed order does not appear to be a fitting analogy or defense to the facts known to this Court.

The content, appearance, and timing of the Requests, the procedure used of contacting this Court through emails to Chambers' personnel, the affidavits regarding the Italian proceedings, and the lack of candor with the Court by Sivec's counsel work together to raise serious questions for this Court regarding the veracity of the Requests. The Requests suggest that an active bankruptcy case is pending in Italy, that orders and determinations as to issues involving Zeeco's claim have been made by that court, and that the judge issuing the Requests has the power and authority - similar to this Court's - to hear and resolve this dispute.[54] If, however, these suggestions are inaccurate, then, as this Court suspects, the Requests are misleading. The involvement of Sivec's counsel in drafting the Requests while initially denying such a role, its failure to inform this Court of its true involvement in creating the Requests, and its failure to inform this Court regarding the actual status of the Italian proceeding, are omissions that raise concerns with this Court.

## C.    Deference to Foreign Court

Despite the questions regarding the particular Requests for Comity, this Court must consider whether to extend comity to the Italian court. This Court's decision on the matters before it is based

---

[54]The Requests reference several orders and determinations of the Tribunale. The only copies of Italian orders or reports that have been provided relate to the original *concordato preventivo* filing and confirmation order, and two orders from Judge Maiolano setting hearings in May and September of 2012.

upon its interpretation and application of Chapter 15 to the claims of these two parties, and not as a response to or sanction for any procedural infirmities or questions surrounding the Requests and actions of Sivec or its counsel. "[C]hapter 15 specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."[55] The initial relief this Court granted to Sivec of freezing any funds held by U.S. creditors may be modified or terminated pursuant to § 1522. Zeeco seeks a termination of this freeze to allow it to recoup or setoff and thus keep the retainage it already has. Sivec seeks a termination or modification of the order by requesting that this Court order Zeeco to turnover the retainage to it for distribution to its creditors.[56]

Comity is the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protections of its laws."[57] The burden of proof is on the party urging comity.[58] "Granting comity ... is appropriate so long as U.S. parties are provided the same procedural protections that litigants in the

---

[55]*In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009)(internal citations omitted.).

[56]*See also* 11.U.S.C. § 1507. Upon the granting of recognition, a court may provide additional assistance to a foreign representative, consistent with principles of comity. A court's decision shall only be made, however, where such assistance will reasonably assure, among other things, the protection of claim holders in the U.S. against prejudice and inconvenience in the processing of claims in the foreign proceeding. Sivec initially listed this section in support of its request for all relief available under Chapter 15 in its Petition for Recognition.

[57]*Hilton v. Guyot*, 159 U.S. 113, 163-164, 16 S. Ct. 139 (1895).

[58]*Reserve Intern. Liquidity Fund, Ltd. v. Caxton Intern. Ltd.*, 2010 WL 1779282, *13 (S.D.N.Y.) citing *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993).

United States would receive."[59] Although comity is a prominent consideration, courts should decline to grant the relief requested if such relief would be "manifestly contrary to the public policy of the United States"[60] or where the interests of creditors are clearly unprotected.[61]

This Court may, at the request of the foreign representative or any entity affected by the relief this Court granted under 1519 and 1521, modify or terminate relief "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."[62] To ensure a party's interests are "sufficiently protected," the bankruptcy court should balance the relief sought by the foreign representative against the interests of those affected by the relief, without unduly favoring one group of creditors over another.[63]

Chapter 15 does not attempt to unify insolvency law of various countries. It does not address issues such as choice of law, conflict of laws, attachment, setoff, recoupment, or similar property rights.[64] Instead, it leaves such decisions to the discretion of courts. In determining whether comity

---

[59]*In re Vitro*, –B.R. –, 2012 WL 2138112 (Bankr. N.D. Tex.) citing *Hilton*, 159 U.S. at 202-203. *Vitro* has been certified for direct appeal to the Fifth Circuit Court of Appeals, 2012 WL 2367161 (Bankr. N.D. Tex.).

[60]11 U.S.C. § 1506.

[61]11 U.S.C. § 1521(b); 1522. *See also* § 1507(b).

[62]11 U.S.C. §1522(a).

[63]U.N. Comm'n on Int'l Trade Law, *Cross-Border Insolvency: Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency*, U.N. Doc. A/CN.9/442 (Dec. 19, 1997) ¶¶ 161-163 ("Guide"); *In re Qimonda AG Bankruptcy Litigation*, 433 B.R. 547, 557 (E.D. Va. 2010).

[64]*See The Guide*, at ¶ 3. Chapter 15 is based on the UNCITRAL Model Law on Cross-Border Insolvency. *The Guide* states: 'The Model Law respects the differences among national procedural laws and does not attempt a substantive unification of insolvency law."

should be extended, a bankruptcy court's authority to grant "any appropriate relief" under § 1521 is "exceedingly broad."[65]   Chapter 15 provides little guidance to courts to determine whether it is appropriate to grant a request to turnover local assets to a foreign representative to distribute in the main foreign proceeding, although it does expressly grant secured creditors the same protections afforded by the U.S. Bankruptcy Code by triggering the applicability of §§ 361 and 363 upon recognition of the foreign proceeding.[66]   In enacting Chapter 15, Congress intended to give courts "broad latitude to mold relief to meet specific circumstances."[67]   The fact that priority rules and treatment of claims may not be identical is insufficient to deny a request for comity.  What this Court must consider is the effect of that difference on the creditor in light of the existing facts.[68]

This Court is unconvinced that the interests of U.S. creditors have been or will be protected in the Italian proceeding.  Previously, based upon the evidence and information presented by the parties, this Court ruled that permanently staying the Eastern District Lawsuit and requiring the parties to try their case in Italy would be manifestly contrary to the public policy of the United States.[69]   The ruling also concluded that Sivec's requested relief would have left Zeeco's interests unprotected.  The Court has heard nothing new to change its mind. Even now, a year after this case was filed, and after numerous opportunities to address this Court's concerns regarding its Chapter

---

[65]*In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009)(citations omitted.).

[66]11 U.S.C. § 1520(a)(1)-(2).  *See In re International Banking Corp. B.S.C.,* 439 B.R. 614, 627 (Bankr. S.D.N.Y. 2010).

[67]*In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 637 (Bankr. E.D. Calif. 2006) (quoting H.R. Rep. No. 109-31, at 116, 2005 U.S.C.C.A.N.  88, 178).

[68]*In re Treco*, 240 F.3d 148, 158-59 (2d Cir. 2001).

[69]*Docket Entries 69 and 70.*

15 duties to protect creditors, Sivec has failed to provide information regarding Italian law, the status of the Italian bankruptcy case, or meet its burden of proof in requesting comity. It is still not clear from the Italian attorneys and Judge Maiolino what procedure is currently available for assessing the relative priority of Zeeco's claim against other creditors, what proceedings have already occurred in that regard, and what further proceedings could and would take place should this Court grant comity and award the retainage to Sivec or to be held in trust in Italy as requested. In fact, in spite of Sivec's claims that the parties simply need to try their case to Judge Maiolino and a yet-to-be-appointed judge, and that setoff is allowed in Italian bankruptcy law, the Requests for Comity and the information previously provided to this Court indicate that this will not happen if the Court orders the funds paid to Bordin, or if the Court allows an Italian judge to determine whether to offset the judgments.

The first Request for Comity states that "this Tribunal has adjudicated the claims of all creditors and debtors of Sivec pursuant to Italian law...."[70] It also notes that Zeeco never filed any claims. One of the Requests for Comity implies that Zeeco's claim of setoff has already been denied in Italy. The Third Request, dated February 15, 2012, states that an order should be entered recognizing and enforcing only Sivec's portion of the foreign judgment with Zeeco being ordered to make immediate restitution.[71] It contains no information regarding Zeeco's judgment or status as a creditor.

Under U.S. bankruptcy law, Zeeco is a secured creditor to the extent of its right to setoff

---

[70]*Docket Entry 74.*

[71]*Docket Entry 95* at p. 2.

against the retainage it holds.[72] Sivec has not disputed this treatment under U.S. law, but has stated that under Italian law, a right to setoff does not give rise to a secured claim or lien.[73] Thus, Zeeco's treatment in Italy would be vastly different than in the United States: its security interest is not merely threatened in the Italian proceeding, it does not exist.[74] Sivec has offered no assurance or explanation of how Zeeco's rights and interests as a creditor and in the retainage will be sufficiently protected as required by Chapter 15, nor how its claim to the funds will be protected should an Italian court ultimately determine that Zeeco is in fact entitled to a setoff.[75] As this Court stated in its previous Order:

> Della Chá states that Zeeco did not receive notice nor was it given the opportunity to file a claim to initiate a resolution of its dispute with Sivec because it was not considered to be a creditor, but was considered a debtor of Sivec. Notice of the liquidation proceeding and claims filing deadline was only given to creditors. Thus, no funds were set aside in the Italian Proceeding to pay Zeeco's disputed claim because no claim was filed and disputed. Zeeco's claim in the Italian Proceeding has been relegated to unsecured status and would be a late-filed or tardy claim if Zeeco were allowed to file a claim at this stage. Under the scenario described by Mr. Della Chá, there appears to be no procedure for Zeeco to have objected to the reorganization plan, make a claim against Sivec, or resolve its dispute with Sivec in the Italian Proceeding. Nor has Sivec offered an explanation or assurance of how Zeeco's rights will be protected should a turnover of the disputed funds be ordered, as Sivec requests.[76]

All that is known is that if comity is extended, an entirely new proceeding will have to take place before a judge or tribunal other than Judge Maiolino. And, no right of recoupment exists under

---

[72]11 U.S.C. § 506(a).

[73]*Docket Entry 50-1.*

[74]*See In re Treco*, 240 F.3d at 160-161.

[75]*In re International Banking Corp.,* 439 B.R. 614, 628 (Bankr. S.D.N.Y. 2010).

[76]*See Docket Entry 70.*

Italian law which would allow Zeeco to offset the judgments. Indeed, the history of this proceeding, including the denial of the right to submit a timely claim, to vote on the plan, and the mysterious Requests for Comity, indicates that Zeeco's interests have not been protected thus far in the Italian proceeding. The actions of Sivec certainly underscore the perception that U.S. creditors have not and will not be protected or treated fairly in this Italian bankruptcy case. The Court has been given no assurance that this will change if comity is extended.

This Court notes that Sivec's position before the District Court was that the District Court did not have jurisdiction to determine Count II of Zeeco's Amended Complaint seeking declaratory determination that it was entitled to keep the retainage to satisfy any damages it may be awarded on its breach of contract claim.[77] It argued that this Bankruptcy Court had retained jurisdiction over this issue and would decide whether Zeeco had the right to retain any funds awarded on its breach of contract claim. While Zeeco argued that the District Court could go ahead and offset the judgments post-trial, the District Court refused to grant that relief, and "remanded" that issue to this Court.

This Court has retained jurisdiction to determine the claims of these two parties, as it initially held in its Order granting recognition and partially lifting the stay. It now determines that it is inappropriate to extend comity to the Italian Court in this matter. In declining to grant the Requests for Comity and order turnover of the retainage without allowing offset, this Court is not determining that Italy's bankruptcy system is not legitimate. The Court has granted recognition of that foreign proceeding. What the Court is deciding is that in this particular case, basic elements of due process are lacking and there is a failure to provide protection of a U.S. creditor's interests. Therefore, pursuant to Chapter 15, the Court will exercise its authority, discretion and broad latitude to fashion

---

[77]*District Court Docket Entry 122*.

the appropriate relief for this case.

**D.**     **Rights of Setoff and Recoupment**

    Zeeco seeks this Court's permission to allow it to offset the judgments either under § 553 allowing setoff and its rights as a secured creditor, or under the doctrine of recoupment. Sivec has not disputed Zeeco's standing under U.S. bankruptcy law as a secured creditor to the extent of its right to setoff, nor has it provided authority disputing Zeeco's arguments that recoupment or setoff is warranted under U.S. law.

    Typically, where opposing parties have claims against each other arising out of the same contract, the claims are allowed to offset each other.[78] Usually, when those claims are valued and reduced to judgment, courts allow those judgments to offset each other, and then enters a judgment in favor of the party with the greater judgment.[79] The setoff of cross demands and counterclaims is "favored and encouraged by the law, to avoid circuity of action and injustice."[80] However, Judge Payne stopped short of doing that in this case. Bankruptcy utilizes the equitable remedies of recoupment and setoff to accomplish a similar result.[81] There is no specific Bankruptcy Code provision allowing recoupment. Instead, the recoupment doctrine is recognized in the bankruptcy setting on a limited basis where debts arise out of a single, integrated transaction. "'Recoupment'

---

[78] *See Clarke v. Hot Springs Electric Light & Power, Co.*, 76 F.2d 918 (10th Cir. 1935), *cert. denied,* 296 U.S. 624 (1935); *Sanders v. Street's of Tulsa*, 1950 OK 41, 214 P.2d 910.

[79] *See Johnson v. Noble*, 65 P.2d 502, 1936 OK 779.

[80] *Clarke,* 76 F.2d at 924, *quoting North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co.,* 152 U.S. 596, 615, 14 S. Ct. 710, 715 (1894).

[81] *See CDI Trust v. U.S. Electronics, Inc. (In re Communication Dynamics, Inc.)*, 382 B.R. 219, 226 (Bankr. D. Del. 2008).

is an equitable doctrine in bankruptcy that allows one party to a transaction to withhold funds due another party where the debts arise out of the same transaction."[82]   It is also defined as "the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim."[83]   Recoupment of funds by a creditor from a debtor's claim against the same creditor under the same contract is not a preference "because it merely defines what the amount of the creditor's claim is...."[84]   It does not require mutuality regarding timing and the petition date since a prepetition debt may be recouped from a postpetition obligation.   Equity is a significant consideration for a court determining whether to allow recoupment.  It is often used  to allow one party to a contract to recoup damages arising from breach of contract to reduce the balance due under that contract.[85]

Setoff is a similar concept, which allows for the adjustment of mutual obligations.  The U.S. Bankruptcy Code recognizes and preserves any right to setoff that may exist under applicable non-bankruptcy law in § 553.  "The right of setoff... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'"[86] The requirements for setoff under § 553 include the following: (1) the amount owed by

---

[82]*In re Beaumont*, 586 F.3d 776, 781 (10th Cir. 2009)(affirming and adopting opinion of Bankruptcy Court, Eastern District of Oklahoma).

[83]  *In re Communication Dynamics, Inc.*, 300 B.R. 220, 225-226 (Bankr. D. Del. 2003) (quoting *In re University Medical Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992) (quoting, in turn, 4 COLLIER ON BANKRUPTCY § 553.03, AT 553-15-17 (15TH ED. 1992)).

[84]*In re ETM Entertainment Network, Inc.*, 154 Fed. Appx.4, 5 (9th Cir. 2005).

[85]*In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986).

[86]  *In re Lehman Bros. Holdings, Inc.*, 404 B.R. 752, 756 (Bankr. S.D.N.Y. 2009) (quoting *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S. Ct. 286, 289 (1995)(quoting in turn

the debtor must be a prepetition debt; (2) the debtor's claim against the creditor must also be prepetition; and (3) the debtor's claim against the creditor and the debt owed the creditor must be mutual.[87]  Pursuant to § 101(5), a claim is any right to payment or remedy for breach of performance, regardless of whether it has been reduced to judgment, or is liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.   A debt or claim arises prepetition when "all transactions necessary for liability have occurred, regardless of whether the claim was contingent when the petition was filed."[88]  Postpetition litigation to determine the amounts of the claims will not bar setoff.[89] The requirement of mutuality mandates that the claims involved be between the same parties standing in the same capacity.[90]

Here, based upon the information presented to this Court regarding these claims,  Zeeco's claims for breach of contract arose in 2007, well before the Italian bankruptcy was filed.  It also appears that Sivec's claim for the retainage arose prepetition upon the creation of the retainage.  Although the warranty period did not expire until sometime in 2009 - after the bankruptcy was filed in Italy - it could be argued that its claim for the retainage was simply contingent or unmatured at filing.  As the claims made herein are between the same parties, and do not involve a debt owed by

---

*Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S. Ct. 806, 808 (1913)).

[87] *In re BOUSA Inc.,* 2006 WL 2864964, *3 (Bankr. S.D.N.Y. 2006).

[88]*In re Myers*, 362 F.3d 667 (10th Cir. 2004); *In re Lehman Bros. Holdings, Inc*., 404 B.R. at 758.

[89]*In re BOUSA Inc.,* 2006 WL 2864964 at *3-4.

[90]*In re Davidovich*, 901 F.2d 1533 (10th Cir. 1990).

some third party, the requirement of mutuality is also present.  Therefore, setoff is appropriate.[91]

Zeeco is entitled to setoff the retainage against the amount Sivec owes it for breach of contract. It

is an unsecured creditor as to the remainder.

An offset of the judgments is also appropriate pursuant to the doctrine of recoupment.  Under

U.S. bankruptcy law, recoupment is not restricted by the limitations of § 553.[92]  Zeeco's claim for

breach of contract arose out of the same transaction as Sivec's claim to be paid the full amount it is

due under the contract, which was held back by the agreement of the parties. Also, recoupment

allows a postpetition claim to be setoff against a prepetition claim, without being defeated by issues

of timing under § 553.  It would be inequitable for Sivec to gain the benefits under the contract

without meeting its obligations to Zeeco under the same contract, and escape from the jury's greater

judgment against it while making Zeeco pay the lesser amount of Sivec's judgment.  Recoupment

is appropriate here to determine and thus reduce the amount of Zeeco's claim against Sivec.

Zeeco is entitled to offset the judgments under either of these doctrines, depending upon the

timing of the claims.  As a secured creditor, Zeeco is entitled to be sufficiently protected if it is

required to turnover the amount of the retainage.  Sivec has made no assurance of protection such

as posting a bond.  Zeeco, however, is simply asking this Court to allow the stay to be lifted so that

it may deduct what it owes Sivec from what Sivec owes it, and proceed as an unsecured creditor for

the remainder of its judgment against Sivec.  Under the recoupment doctrine, both debts arose out

---

[91]The Italian lawyers submitting Declarations to this Court both agree that setoff is allowed under Italian bankruptcy law.  However, Della Chà stated this was only if Zeeco was determined to have a valid prepetition claim, and since it was not determined to be a creditor, it was not afforded the opportunity to file a timely claim.

[92]*In re Davidovich*, 901 F.2d at 1537.  The Tenth Circuit also observed that the common law doctrines of recoupment and seoff frequently merge in non-bankruptcy contexts.

of the same transaction: the contract between the parties by which Sivec promised to supply parts to Zeeco in return for Zeeco's promise to pay for those parts, and by which Sivec agreed to allow Zeeco to hold back payment for a period of time to satisfy warranty claims. If Sivec's claim is said to arise postpetition, recoupment would allow Zeeco to offset its prepetition claim against the amount it owes Sivec postpetition. If, however, Sivec's claim for the retainage is said to arise pre-petition when the contract was entered, setoff is appropriate. Both claims arose prepetition and arose out of the same contract, thus meeting the requirement of mutuality under § 553.

**E.      Equitable Considerations**

In fashioning the relief for this case, the Court is persuaded that equitable considerations support its decision. Sivec actively participated in the District Court case, a proceeding conducted by a foreign court. Not only did it choose to defend itself against Zeeco, it invoked the assistance of two courts of the United States' judicial system, and admitted that these courts had jurisdiction to decide the dispute between these parties. It filed a counterclaim against Zeeco, seeking to obtain a judgment from a United States' court against a U.S. corporation. It also filed a Chapter 15 Petition in this U.S. Bankruptcy Court, seeking assistance in recovering a U.S. judgment in its favor and avoiding a U.S. judgment against it. A jury has considered the claims of both parties and has determined that Sivec owes Zeeco more than Zeeco owes Sivec. Thus, this Court believes that allowing offset of these funds is the practical and equitable course for the facts of this case.

**IV.      CONCLUSION**

This Court denies the Requests for Comity and Sivec's request for turnover of funds because it does not believe Zeeco's interests will be sufficiently protected if it is ordered to turnover the funds and file a claim in Italy, and because the equities and law support recoupment and setoff. Comity

is not appropriate because  Zeeco's status in Italy would be vastly different from its status in the United States.  In Italy, based upon the information provided by Sivec's attorneys, Zeeco was not considered a creditor at all, so at best it would be an unsecured, tardy claimant who would likely receive nothing on its claim.  Zeeco's status in the U.S. is that of a secured creditor, and a creditor who is entitled to recoup or setoff the funds that it holds.  This Court is guided by the principles of Chapter 15 in the exercise of its broad discretion to fashion appropriate relief.  The claims of each party arise out of one contract and transaction whereby the retainage was by agreement, and the natural and logical result is a mutual offset of claims.  This Court did not select the litigants.  Sivec voluntarily sought this Court's protection by filing its Chapter 15, ostensibly to halt the impending jury trial in the District Court of the Eastern District of Oklahoma.  It now must be bound by this Court's orders.

Zeeco's Motion to Allow Recoupment and Setoff shall be granted.  Zeeco may offset Sivec's judgment against its judgment against Sivec.  The request for turnover of funds by Bordin and Sivec in the amount of Sivec's judgment against Zeeco is denied.  The remaining matters before this Court are therefore moot.  A separate Order and Judgment consistent with this Opinion shall be entered simultaneously herewith.

###